Submitted January 28, affirmed April 13, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW MARIO OSBORNE,
aka Matthew Mario Avila,
*Defendant-Appellant.*

Malheur County Circuit Court
09021982C; A142152

255 P3d 513

CJS, Robbery § 24.

Peter Gartlan, Chief Defender, and Meredith Allen, Senior Deputy Public Defender, and Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

.

**BREWER, C. J.**

Defendant appeals from his conviction for robbery in the first degree, ORS 164.415, arguing that the trial court erred in denying his motion for a judgment of acquittal. Defendant reasons that, because he only *held* a knife in his hand as he demanded money from a store clerk, he only "threatened" to use the knife and did not "use[ ] or attempt[ ] to use" the knife as required by ORS 164.415(1)(b). We affirm.

The pertinent facts are few, and we state them in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994). Defendant entered a clothing store and walked up to a service counter. A store clerk came to the counter, which was approximately three feet wide and had a cash register on one side. The clerk stood behind the cash register, and defendant stood directly across from her. The clerk asked defendant if she could help him, and defendant replied, "I hate to do this to you, but give me all your money." The clerk looked down and saw that defendant had a knife in his right hand. The clerk noticed that the knife was a folding knife with a blade approximately two to two and a half inches long. Defendant held the knife "off to the side" as he spoke to the clerk, apologizing to her as she emptied the cash register. The clerk gave defendant the contents of the register, and defendant fled. On direct examination, defendant testified that he

> "thought that if I at least showed the knife, that I was more apt to get the money than just go in there with my hand in my pocket * * * I thought it gave me a better chance of getting the money."

On cross-examination, when asked by the prosecutor why he had the knife, defendant testified:

> "[Prosecutor]:  You were trying to scare her?
>
> "[Defendant]:  I don't—no. I was using it for my benefit, not—I don't think I was trying to scare her. I was just

showing her that I needed the money, and it was serious. Not that I was going to harm her or scare her.

"* * * * *

"[Prosecutor]: [Defendant], when you pull out a knife on a woman who's alone in a retail store and demand money, that's not a threat in your opinion?

"[Defendant]: It is a threat, but I had no intent to harm her.

"[Prosecutor]: Okay. So you intended to threaten her, but you didn't intend to carry the threat out and actually harm her? That would be your testimony?

"[Defendant]: Yes.

"[Prosecutor]: So you're admitting that you threatened her with it?

"[Defendant]: Yes."

In the indictment, defendant was charged with robbery in the first degree, ORS 164.415(1)(b), on the ground that he had "use[d] or attempt[ed] to use a dangerous or deadly weapon" in the course of committing a theft. At trial, after the state had presented its case, defendant moved for a judgment of acquittal, arguing that there was not "sufficient evidence to indicate that [defendant] used or attempted to use a dangerous weapon." The trial court denied the motion. Defendant was convicted by a jury; this appeal followed.

Defendant renews his argument on appeal, asserting that his conduct constituted only a threat, not the use or attempted use of a dangerous weapon. The state replies that the evidence was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that defendant had used or attempted to use the knife. The parties contentions concern the meaning of the term "use" in ORS 164.415, and, in resolving those contentions, we apply the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), as modified by *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). In doing so, we first look to the statutory text, in context, and, to the extent that it is useful, any pertinent legislative history. *Id.*

ORS 164.415 provides, in pertinent part:

"(1)   A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"* * * * *

"(b)   Uses or attempts to use a dangerous weapon[.]"

ORS 164.395, in turn, provides, in part:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking[.]"

As noted, defendant argues that his conduct, although sufficient to constitute a threat of immediate use of physical force, nevertheless did not rise to the threshold of use or attempted use of a dangerous weapon. Defendant does not deny that the knife he wielded was a "dangerous weapon," but, instead, asserts that the use or attempted use of a dangerous weapon required by ORS 164.415(1)(b) is qualitatively different from the use or threat of immediate use of force required by ORS 164.395(1). Because his conduct constituted only the threat of force, defendant reasons, that conduct did not violate ORS 164.415.

The legislature has not defined the term "use" in ORS 164.415. Accordingly, we give the word its ordinary meaning. *PGE*, 316 Or at 611. The ordinary meaning of "use," as pertinent here, is "to carry out a purpose or action by means of : make instrumental to an end or process : apply to advantage : turn to account : UTILIZE[.]" *Webster's Third New Int'l Dictionary* 2524 (unabridged ed 2002). Thus, in order to "use" a dangerous weapon as required by ORS 164.415(1)(b), a defendant must carry out a purpose or action by means of the dangerous weapon, make the weapon instrumental to an end or process, or apply the weapon to his or her advantage. Applying that definition of "use" to the evidence here, we conclude that a jury could find beyond a reasonable doubt that defendant used or attempted to use the knife to accomplish

the theft—indeed, defendant's own testimony established that point: "I was using [the knife] for my own benefit * * * I was just showing her that I needed the money, and it was serious."

The legislative history of ORS 164.415 confirms that interpretation. Although the legislature did not define the term "use," the drafters did include a number of examples of acts that would constitute first-degree robbery, and one of those examples closely mirrors the facts in this case. The drafters explained that, where

> "A tells V to hand over his money. V refuses. A takes a 6-inch piece of lead pipe from his pocket, and holding it in his hand, tells V he 'means business.' A is guilty of first degree robbery under § 150(1)(b)."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, §§ 148-50, 156 (July 1971). Section 150(1)(b) was later codified as ORS 164.415(1)(b). As in the example of first-degree robbery provided by the criminal code's drafters, here, defendant held a dangerous weapon—his folding knife—in his hand so that the store clerk would know that "I needed the money, and it was serious." That evidence was sufficient to allow a rational trier of fact to find that defendant had used or attempted to use a dangerous weapon as required by ORS 164.415(1)(b).

We reject defendant's argument that the "use[ ] or attempted use[ ]" of a dangerous weapon requires more than a particular manner of "threat" of the use of immediate physical force. Reading ORS 164.415 and ORS 164.395 together, it is apparent that "use or attempted use of a dangerous weapon" in ORS 164.415(1)(b) describes a manner of use or threat of immediate use of physical force that elevates third-degree robbery to first-degree robbery. That is, to commit first-degree robbery, a defendant must use or threaten the immediate use of physical force by using or attempting to use a dangerous weapon.

The legislative history of ORS 164.415 supports our conclusion. The drafters of the code explained that third-degree robbery—later codified in ORS 164.395—covered "unarmed type[s] of robbery," and that first-degree robbery—

later codified at ORS 164.415—provided for the "three most serious aggravating factors, any of which, if present, elevates the crime to robbery in the first degree." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, 154-55 (July 1971). "Any of these elements," the drafters explained, "represents the greatest threat to the victim and is graded accordingly." *Id.* at 155. Thus, contrary to defendant's assertion that the use or attempted use of a dangerous weapon is separate from and additional to the use or threatened use of immediate physical force, the commentary demonstrates that ORS 164.415(1)(b) addresses the conduct of a defendant who uses or attempts to use a dangerous weapon to carry out the use or threatened immediate use of physical force required by ORS 164.395.

Because the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that defendant used or attempted to use the knife, the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.